Okay, we are here in the first division of the first district appellate court. In the case of the people of the state of Illinois versus Tyron to Bennett 1-19-1545. And we're here for oral arguments and who is representing the appellant. My name is Allison Shaw and I'm here on behalf of Tyron to Bennett. Okay, and who has who's here for the state? Good afternoon. I'm Assistant State Attorney Aaron Slattery on behalf of the people. Okay, let's start out with the appellant. May it please the court. Today, I'll be focusing on the first issue, but we'll be glad to answer any questions you may have about the other issues as well. Excuse me, you know, I forgot to introduce myself, Justice Lavin, and my colleagues, Justice Michael Hyman and Mary Ellen Coughlin, who will be hearing the case today, for the record. Thank you. Go ahead. Okay. There is no question here as to whether Tyron to Bennett committed an offense. However, the question is what offense is supported by the evidence presented at trial. Given the state's own evidence and arguments regarding the significant role alcohol played, the evidence shows that Bennett lacks the required specific intent for first degree murder. The issue here is not whether voluntary intoxication is an affirmative defense. Rather, the issue is whether voluntary intoxication can negate the men, the requisite mens rea for a specific intent crime, like first degree murder. So that is the most important issue, right? On this on this topic. So my question is, what's your best, the best argument that voluntary intoxication is still can be used to negate the applicable may may raise? That would be the legislative history, the senator's statements as they were crafting the after as they were passing the amendment to the statute, removing voluntary intoxication, as an affirmative defense. They specifically said that they had reasons good reasons for removing voluntary intoxication as an affirmative defense, but specifically said that they were not attempting to in any way undermine the burden on the prosecution to prove the mental state. And we maintain it was good policy to get rid of the affirmative defense of voluntary intoxication. But it is also good policy to hold the state to its burden to prove the requisite mens rea for the crime. Particularly here. Well, do you also people versus Slobone? If we follow that, then you're in good step, right? And it's been criticized. It has been it has been criticized by the Greer decision that the state moved to cite an additional authority, but as additional authority, however, Slobone's reasoning So in Greer's dish, the Greer decision ignores the legislative history behind the amendment. Whereas Slobone, which which is also a recent decision also postdates the amendment to the statute, recognized the amendment to the statute, sorry, recognize that that that voluntary intoxication had been removed as an affirmative defense, but also look to the legislative history and stated, well, we do understand that this is still relevant when you're talking about the mental state on the state's burden to prove the mental state. So in that kit, and for those reasons, we submit that Slobone is the better reason decision, simply because it recognizes the the the intent behind the intent that the legislature had to not wholly remove voluntary intoxication as it relates to the mens rea. And, and I think that's important to know, because the state's argument and the Greer decision are setting up a landscape where voluntary intoxication plays absolutely no role whatsoever in determining criminal responsibility. But that's clearly contradictory to the legislature's intent, the legislate in passing the amendment, because their statements show, look, we, we recognize that we don't want this as an affirmative defense anymore, we understand that this should not be an affirmative defense. We don't, we don't want to say that people can just drink and then completely absolve themselves of criminal responsibility. But we also recognize that there are instances like the case at issue, where intoxication does have a role to play. And that role is with regards to forming the requisite mental mental state for especially higher level offenses like first degree murder, where you have to prove this specific intent to kill. And what about stabbing? What about stabbing somebody in the chest? So as with regards to whether the the the stab wound, we the stab wound is sufficient evidence to show her mental state, that in and of itself cannot prove an individual's mental state. First of all, there's absolutely no testimony or evidence about what the circumstances regarding that were, we don't know what that is. And therefore, it's the state's burden to prove what to prove that Bennett possessed the specific intent to kill when she did stab, or when the when the stab wound occurred to the chest. And Miss Shaw, what about in addition to that, the facts of her trying to cover it up by telling her the other person not to hang up with 911 to say the boyfriend did it? Well, so there's there's two parts of that. First of all, her her actions following following the event, it's the altercation itself, don't actually speak to her specific to her mental state at the after the case are in line with her being intoxicated of her not having not having a reasonable decision making capabilities. She's panicking. You need a little bit more than that, don't you? Doesn't it have to be suspending all reason? I mean, I would submit that when you are when she is going wavering back and forth between saying don't call the police, telling her, you know, this in these panicked moments or whatever, she's clearly not forming reason she's not forming the intent. And in the end, what we're going to hear in about a minute, I'm sure how that's that's exactly what she's doing. I mean, I'm sure but what the state has to prove is that at the moment that she at the moment that the injury occurred, that she possessed the specific intent to kill. It's also important to remember, this is her best friend. This is someone she considered her sister. This is coming after a night, a full night of heavy drinking, drug use. She and one other person shared a fifth and a pint of liquor. This is this was not a situation where she was acting. I don't the state, the state's evidence, simply but just fails to prove that she possessed the clear headedness, the intent, this this specific intent to commit first degree murder in those moments. So you're saying that that actually shows that there was a suspension of her power reasoning? Yes. Um, and I think the trial judge certainly didn't think so. That's correct. But this is the argument here is is we're that we're raising is the sufficiency of the evidence argument that the state's evidence does not actually support the finding that she aside that point, there's also there's also a difference between, you know, that even even if then it acted deliberately, that that deliberate behavior, that deliberate act could still be done recklessly. So even the wound in and of itself is is not sufficient evidence of a specific intent to kill. And if you look at some of the other cases, you see that they that courts have looked at the surrounding circumstances of other instances to support that finding of a specific intent situations where there are multiple stab wounds to the black box area or situations where verbal threats are being made, or preparing oneself before by concealing a knife in one sleeve waiting for the thing the other person being held back. These are all cases where they're find other things that support the finding of a specific intent. Here, there is none of that evidence. What about here where the doctor on the autopsy? Does that his testimony support your contention? I think his testimony does support our contention because he his testimony is, you know, that there is a wound to the chest. The doesn't testify to any, he cannot testify to any whether that act was deliberate or not. He can only testify that the wound occurred. And this was the place. It was one single wound. It wasn't a repeated, you know, there weren't repeated stabs, stab wounds to the chest area or any other vital area. So yes, I think. Do we know how they were standing on the stairs at the time? We don't. We know how their location, whether Diamond, I mean, her state of mind at the time and that she was drinking, you know, you're on stairs, there's just all these arguments and everything else that's going on there. I mean, what do we know about the situation at the time that the defendant stabbed her? I mean, the things that we know are that from the testimony and the evidence presented at trial is that this happened very quickly. This happened in the midst of, you know, as the men were fleeing the apartment and going down the stairs ahead of them. This is this. We don't have any specific testimony of what exact of where they were standing in relation to each other or any of those things. And I think that's part of the problem is that the state needed to present in order to prove the mental state to support this finding that Tyron to Bennett committed first degree murder. There needed to be some evidence of a specific intent to kill. And there simply wasn't. And leaving one room, going to another, getting the knife, going back in and stabbing this person. The trial court thought that that was sufficient intent. Well, that's that's that's not what happened with with Donovan, which is getting into the other. But so so Bennett actually armed herself not against Donovan, but against Allen in their altercation that they had in the moments prior to the altercation that occurred between Diamond and Bennett, which that altercation no one saw. So isn't there even less reason for this other for the murder victim? I mean, aren't the facts even worse? I mean, I think you're in your argument. I mean, under under your argument, any murder where there's not an eyewitness state loses. I don't I mean. So first of all, I don't think that that that that hurts my argument. I think that actually the fact that Bennett armed herself not against Donovan, but against Allen actually helps my argument because whatever, because she wasn't Diamond or Donovan wasn't part of that of that initial situation where she armed herself. But then secondly, again, we're not saying that Bennett should be absolved of first degree murder. And we're also not saying that in any situation when there's not a specific eyewitness to to an offense, that there's no first degree murder. What we're saying saying is, is that on these facts, looking at this case as it is, there's no evidence of a specific intent. We're also not arguing that Bennett should be let off the hook scot free. This is not an issue of whether she's wholly innocent. She's clearly not innocent. There's a dead body. What the issue is, is whether the state proved her guilty of first degree murder instead of involuntary manslaughter. You I'm sorry. Go ahead. Are you disputing that that the severity of the injuries is not something that can be taken into account in determining her intent? I think this in, I think, yes, the severity of the injuries can be taken into account. And that's what's done in these other cases, which is why those examples of other cases where you have more evidence of someone's intent, where there there are multiple stab wounds to the chest, there's multiple, there's indication, more indication than exist in this case, that show a specific intent or repeated intent to, you know, to cause death, and not simply a reckless disregard that your actions could lead to death. And that's, that's the difference here is that the state has the burden to prove that she acted with the with the specific intent to kill. And so we're looking at what the state presented as evidence here. And the testimony here, the state's own argument at trial focused on the fact that this was a a moment a time where out a night fueled by alcohol, alcohol, even the state was, their own argument was recognizing that alcohol played a role here. And it's also in line with the fact that the legislature specifically intended for this for intoxication to play a role when not determining whether someone has the mens rea for us for a specific intent crime. What you have here is compounded by the standard of review. I mean, this is something we have to I know you're aware of it. And this is a bench trial. And the judge himself stated that the evidence they have explained why defendant armed herself with a knife that night were quote, clear and compelling. How do you overcome that when we're looking at everything in the light most favorable to the state as we have to? Well, so first of all, I think when you're talking about arming herself with a knife that again, like I mentioned before, that occurred when she was defending herself against Alan. Again, we don't know what happened after that. We know what happened with Alan, because there's testimony, there's more evidence supporting it. And, and it's after that, that's, that's at issue here. And, and again, looking at the evidence in the light most favorable to the state, again, it was the state's own argument that alcohol played a role in this. It was the state's own argument that this was an altercation that was the result of this, this impairment. So I believe even under even looking at it through that lens, the state has failed, the state failed to meet its burden. Okay. Let's hear it from the state. State please the court. Defendant's challenge to the sufficiency of the evidence lacks merit, where her conduct prior to, during, and after the fatal stabbing established that she was capable of forming and acting upon the intent to kill notwithstanding her voluntary intoxication, her voluntary consumption of alcohol that evening. As your honors have alluded to in your questioning of appellant's counsel, there are a number of factors that when viewed in the light most favorable to the people show that she acted with the intent to kill. One, it's the stabbing itself and the severity of Donovan's injuries. Let's stop there. The stabbing itself, how does that, how do you know she intended to hit the victim? So we have testimony from the medical examiner who testified that the depth and the trajectory of the wound. So it went so far down as to puncture the lung and the superior vena cava that he had never seen anything like that in an accidental type stabbing. So that's of course. But that doesn't mean that she deliberately sought to hit her in the chest, you know, near the heart. The fact that that's where it landed. Yes. Okay. But how, he said he couldn't testify whether on this issue at all. I mean, based upon what, on the autopsy, right? Well, I mean, there are no eyewitnesses. We don't know exactly how this occurred, but the severity of the wound is something that we considered when evaluating. But the severity of the wound, but it's in your briefs, you know, the fact that anytime you hit the chest area, the box that you talk about, that's bad. Okay. And it was in the box, but that doesn't mean that every time somebody stabbed in the box, that automatically means it was delivered, right? Would you agree to that? Not every time. I'm not saying this case, I'm just taking it just as a matter of principle. As a general proposition, I would agree that's true. However, this wasn't a superficial wound. Again, this was a wound that went down so far as to puncture the lung and pierce the superior vena cava. So I would agree that maybe if there was some sort of like, you know, superficial puncture wound that might support finding no intent to kill, but when you have something that is that severe, and the trajectory and the depth was not something the medical examiner had seen, and something that was accidental, that would support inference that she acted with the intent to kill. And also- It goes to the argument. The argument from the other side is, yes, you're talking about the location, right? But how is that of the attack? Well, the nature of an injury when there's no eyewitnesses to, you know, an offense- Or the manner. The character and the manner of the- Right. It's also important to note, too, that it's not just the one stab wound. The medical examiner also found in size wounds to her scalp and also to her, I believe it was the left forearm. And he specifically categorized the injury to the left forearm as a defensive type injury. So indicating that, you know, Donovan was struggling against defendant as she was attacking her with the weapon. And in addition to, you know, the injury itself, we also discussed this earlier, but we have defendant's conduct after the stabbing. You know, notably when her cousin was on the phone to 911 trying to get medical assistance for Donovan, who was gasping for breath, defendant instructed her to hang up. And at that point, she appeared to have been more concerned with concocting a story to blame the stabbing on her boyfriend. But don't you think she's scared? Don't you think that you're, you know, if you didn't mean to kill somebody, and this just happened, you're going to do a lot of things, right? That doesn't mean, I don't see how that's relevant. Well, she wasn't dead yet. She was alive and her cousin was trying to get medical assistance. She's scared that, you know, she's trying to blame somebody else, which is something people do all the time. You know, that's not unusual. But that doesn't mean you did it deliberately or not deliberately. I mean, it's the inference that she was not concerned with her friend's welfare and that what, you know, the wound that she did inflict was intentionally done. When you look at the case law, the cases that were cited by the parties, by you, are much more serious in regard to this type of conduct, trying to not, I'm trying to deny, right? I mean, those are much more severe cases, T.G. and Bowens. Right. So, I mean, those are just examples of cases in which, you know, a defendant's conduct afterwards in attempting to mislead police can be used to infer whether the defendant acted with, you know, the requisite mental state. But do you have a case similar to the facts here? Not so severe. I mean, you take the most severe case and compare it to this. I understand it. But we can't, we should be comparing it to cases that are similar to this. Is there any case that's similar with a much less attempt to do so than those severe cases that you cite, T.G. and Bowens? With respect to what happened after the stabbing? I mean, in the other cases, there was a lot more going on afterwards to try to cover it up, right? Well, and we also have in this case, not just the hang up and let's blame my boyfriend for stabbing my friend. We also have her hiding the knife, the murder weapon. That's consistent, isn't it, with trying not to have the blame fall on you? It's consistent with her trying to get away with murder, yes. Well, we know somebody died. But the question is whether it was deliberate or not. And we know that she was scared. And that's consistent to try to hide the knife and trying to pin it on somebody else. I mean, it's consistent that she was trying to get away with what she did. And also, again, there is additional conduct, defendant's own conduct that shows that she did act with this intent. Obviously, they were friends. They were supposedly best friends. There was evidence that night that she displayed notable animosity towards Donovan before the stabbing occurred. There was testimony that the two were, I believe, humphreys who were bickering before the stabbing. There was an incident where the defendant stomped on Donovan's head and neck before the stabbing. And she also called Donovan a bitch before the stabbing. So all of these circumstances together, defendant's words and actions that people submit provided the requisite evidentiary support that when she did so with the intent to kill. And the mere fact that defendant had been drinking prior to the stabbing does not alter this conclusion. Her effort to rely on her voluntary intoxication to negate the requisite mental state lacks merit, because the argument fails to accord with the plain language of the current Illinois intoxication statute, as well as current case law interpreting that statute. Namely, Peeble versus Greyer, which the people cited in our motion to cite additional authority. Well, there's two cases that are an opposite, right? Well, you're pointing to one. And there's another panel that went the other way, correct? Yes. So that means the law is up in the air on this issue. Correct? Um, I would say that there's a dispute as to, you know, the extent to which voluntary intoxication remains relevant in criminal proceedings. I agree with that. I would agree. Okay. And as Greer pointed out, in Slaban, they're relying on, in support of its contention that voluntary intoxication somehow remains relevant, notwithstanding amendments to the intoxication statute. Slaban relies on a case that was decided before voluntary intoxication was removed from the statute. And for that reason, was an incorrect interpretation of the law as it exists today. And I would argue that Greer's conclusion is supported by the plain language of the statute. The statute in its current form only references involuntary intoxication. The phrase voluntary intoxication is not found within the text of the statute. The statute does not contain any language indicating that a criminal defendant may employ his or her state of voluntary intoxication to mitigate or negate specific intent. And I would argue that the legislative history also supports that construction of the statute. Appellate counsel is referencing a statement made by one senator and his interpretation of what's voluntary intoxication, its relevance in criminal proceedings. When we have other senators saying that the purpose of this amendment and its removal of voluntary intoxication as an affirmative defense was to ensure that criminal defendants who voluntarily consume alcohol or drugs remain accountable for their criminal conduct in while they're under the influence. But still, she's liable. I mean, it's either involuntary manslaughter or first degree murder. So either way, it's not an affirmative defense. That's for sure. Okay. So but that doesn't mean that there couldn't be a situation where under the facts, it could be involuntary manslaughter. I mean, I would argue under the facts of this case that, you know, there's no, there's clear evidence that she engaged in purposeful and rational behavior, especially following the crime. She knew what she had done. She was, she got rid of the murder weapon. She was trying to get her cousin to blame her boyfriend for the stabbing. Even when voluntary intoxication was an affirmative defense in the state, a defendant could not employ that affirmative defense, there was evidence that he or she had engaged in purposeful or rational conduct. And here we have that, we have clear evidence that the defendant had done so. So even if, you know, this court were to, you know, agree with LaVaughn and its conclusion as to the relevance of voluntary intoxication, there's simply no evidence that the defendant in this case was so intoxicated that she, you know, she couldn't appreciate or form, you know, appreciate the criminal, the criminality of her conduct or that she was unable to formulate her act on the intent to kill. And the trial court certainly by its findings, felt that there was clearly, yes. I mean, trial court specifically found that, you know, defendant's conduct evidence strong consciousness of guilt. The court found that, you know, the manner in which these stabbings took place that, you know, the defendant objected to her boyfriend, you know, getting on her about bullying her best friend. And that's when she got herself a knife and she acted out and retaliated against him. And when they didn't take her best friend with her, she was upset, called her friend a bitch and then she stabbed her friend. So, you know, Isn't it also true that the state admitted a trial that the incident between Bennett and Donovan came in at the end of a fueled with alcohol evening? Yeah, I mean, there was never any dispute that, you know, alcohol was involved that night. But there was certainly, you know, no sort of concession by the state that, you know, defendant's conduct could be excused or blamed away or she could, you know, get away with her conduct simply because she had, you know, drink alcohol that evening. No, I'm not. I'm not suggesting. Okay, let's hear a rebuttal. Thank you, your honors. Just very briefly, a couple of points that I want to make. First of all, just going building on what the state just said. Again, they agree that there's no dispute here that alcohol played a role here. The question for this court and the question at issue is whether there's still a place in Illinois law for intoxication for these things. And we submit that it has not been that the amendment of the statute removing voluntary intoxication as an affirmative defense did not mean that it was then also removing it as a removing the state of its burden with regards to proving the requisite mental state for a specific intent crime. Regarding, you know, Bennett's actions this evening, they cannot be divorced from the role that alcohol played here. There are a lot of things that occurred this night. There are a lot of things that occurred that morning, all of which support the show that this was a night where people were not acting with full reasoning. They were not acting with full consciousness and well-reasoned decisions. Well, was there any evidence about drinking that the defense was not allowed to get in? It seems like every sip was in the record. Right. Well, the argument is not that defendant was precluded from putting this on as a defense. Again, this argument is a sufficiency argument. We're arguing that the evidence presented at trial failed to prove Bennett guilty of first degree murder. And again, you know, what's already been said is, you know, this is not something where this is not an affirmative defense. This is not an argument that Bennett is wholly innocent or absolved from her behaviors that night. But rather, the question is, what is the offense? What is the appropriate offense for someone who after a night with alcohol and her best friend of multiple decades, someone she considered her sister, it ends up dead and whether Bennett possessed the specific intent to kill her. If there are no further questions, I ask this court to grant the requested. Thank you. All right. Well, thank each of you for your briefs and for your argument. They were very well done in both respects. We will take the matter under consideration and get back to you with our decision. Have a good rest of your day.